**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03352-CMA

ANN MARIE GOULD, *pro se*,

    Plaintiff,

v.

ANDREW SAUL, *Commissioner of Social Security*,

    Defendant.

---

## ORDER REVERSING DENIAL OF SUPPLEMENTAL SECURITY INCOME

---

    This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Ann Marie Gould's[1] application for supplemental security income ("SSI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court reverses the decision of the Commissioner.

## I.      BACKGROUND

    On February 26, 2016, Ms. Gould filed an application for SSI, alleging disability beginning July 1, 2013. After her claim was initially denied on July 12, 2016, Ms. Gould filed a written request for hearing, wherein she stated that she could not work and was

---

[1] Ms. Gould is proceeding *pro se* in this case. Therefore, the Court construes her filings liberally, but may not act as her advocate. *Alford v. Comm'r, SSA*, 767 F. App'x 662, 664 (10th Cir. 2019) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). That means that the Court "cannot take on the responsibility of serving as [Ms. Gould's] attorney in constructing arguments and searching the record." *Crampton v. Comm'r, SSA*, 778 F. App'x 574, 577 (10th Cir. 2019) (quoting *Garrett*, 425 F.3d at 840).

depressed. (Doc. # 13-4 at 97.)[2] On January 19, 2018, Ms. Gould appeared *pro se* at a hearing before an Administrative Law Judge ("ALJ"). At the hearing, Ms. Gould testified that she had been diagnosed with depression, anxiety, schizophrenia, psychosis, and a traumatic brain injury caused by a car accident in 2009. She testified that she has various physical and cognitive limitations that inhibit her ability to work, including essential tremor in her hands, hallucinations, difficulty dealing with people, difficulty adapting to change, and difficulty understanding or remembering instructions. (Doc. # 13-2 at 68–74.) An impartial vocational expert also testified at the hearing.

On April 9, 2018, the ALJ issued a decision that concluded Ms. Gould is not disabled for purposes of the Social Security Act. (Doc. # 13-2 at 25.) The ALJ found that Ms. Gould has the residual functional capacity to "perform a full range of work at all exertional levels" with the following nonexertional limitations: she can perform only simple, rote, repetitive tasks; she cannot perform complex tasks; she can have no dealing with the general public; and can have only occasional dealing with coworkers. (*Id*. at 16–17.) Ms. Gould sought review of the ALJ's decision by the Social Security Administration Appeals Council, stating, *inter alia*, that the ALJ gave little weight to her treatment providers and did not consider that Dr. Arlene Shanklin diagnosed her with schizophrenia. (Doc. # 13-4 at 139.) Her request for review was denied. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security. The instant appeal followed.

---

[2] The exhibits filed at Doc. # 13 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (e.g., Doc. # 13-4) and the page number from the Administrative Record (e.g., at 97).

## II.    STANDARD OF REVIEW

When reviewing the Commissioner's decision, this Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Additionally, "[f]ailure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.    DISCUSSION

The Court liberally construes Ms. Gould's Beginning Brief (Doc. # 15) as arguing that the ALJ failed to adequately consider relevant medical evidence in the record. The Court finds that the ALJ erred by inadequately considering Dr. James H. Waters' evaluation of Ms. Gould, Ms. Gould's diagnoses by Dr. Arlene Shanklin, and the aspects of Dr. Stuart L. Kutz's examination report that relate to personality disorder. The Court finds the remainder of Ms. Gould's arguments to be unavailing.

## A.  THE ALJ FAILED TO CONSIDER RELEVANT MEDICAL EVIDENCE

Although "[i]t is not the place of the district court to weigh the credibility of complex, contradictory evidence," "it is the place of the district court to ensure that the ALJ has faithfully fulfilled his legal duties," one of which is "to adequately develop the record." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004). This duty is rendered "meaningless if the ALJ did not actually consider the evidence" in the record, meaning that the ALJ cannot "simply pick and choose . . . only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." *Id*.; *Maragl v. Colvin*, No. 13-CV-2435 KAM, 2015 WL 4600542, at *17 (E.D.N.Y. July 29, 2015) (remanding for failure to adequately consider the record where ALJ "did not adequately explain her reasoning" in denying disability benefits by citing certain evidence without "address[ing] statements from plaintiff" contrary to that evidence).

The Commissioner has a general burden, "in addition to discussing the evidence supporting [his] decision, to 'discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" *Grogan v. Barnhart*, 399 F.3d 1257, 1266 (10th Cir. 2005) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id*. at 1261–62. Accordingly, "it is more than merely 'helpful' for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources. It is absolutely essential for meaningful appellate review." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (emphasis added).

1.   Dr. Waters' Evaluation

Dr. Waters conducted a psychological and neuropsychological evaluation of Ms.
Gould in December 2015, during the period of alleged disability. (Doc. # 13-7 at 247–
55.) Dr. Waters concluded that Ms. Gould's "degree of difficulty with learning and
retention is likely to prove quite debilitating at work."[3] Additionally, Dr. Waters
commented on Ms. Gould's physical limitations, reporting that she had "moderately to
severely impaired dexterity with both hand[s]," and that "the problems seem to be
serious enough to limit her functioning in many perceptual motor pursuits." (*Id*. at 249.)
He further noted that Ms. Gould had significant problems with mental and behavioral
control, that her emotional stress may interfere with her functioning, and that Ms. Gould
yielded a high score on the psychoticism scale.[4]

Thus, Dr. Waters' evaluation bears heavily on Ms. Gould's ability to work in
general and her ability to relate to others, including coworkers. However, in reaching his
decision, the ALJ did not demonstrate any consideration of Dr. Waters' evaluation.
Given the probative value of the evaluation, the ALJ erred by failing to consider it. *See*
*Berryhill v. Barnhart*, 64 F. App'x 196, 200 (10th Cir. 2003) ("Although the ALJ need not

---

[3] (*Id*. at 250.) He further noted that her rate of acquisition of material was severely impaired
initially, suggesting her main vulnerability was learning, and "following a sequence requires a
great deal of effort and time for her." (*Id*. at 250–51.) He commented that Ms. Gould had
"attention and concentration problems that allow her to function error-free only by reducing her
working speed to a level that is probably below what is required in many contexts." (*Id*. at 254.)

[4] Dr. Waters indicated that Ms. Gould's score "suggests she feels alienated from others," "may
at times be somewhat disconnected from reality," and "might experience unusual symptoms
such as delusional beliefs." He noted that Ms. Gould referred to having seen "a vision." Dr.
Waters further indicated that Ms. Gould's high score on the psychoticism scale may signal
disorganization related to severe stress, rather than underlying psychosis. (*Id*. at 253.) This
information is particularly relevant because Ms. Gould argues that she has been diagnosed with
schizophrenia and the ALJ failed to consider that in making his determination.

discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.").

2.   Dr. Kutz's Report

In assessing Ms. Gould's mental limitations, the ALJ also failed to consider relevant parts of Dr. Kutz's consultative examination. Dr. Kutz diagnosed Ms. Gould with "probable Personality Disorder Not Otherwise Specified with antisocial features (301.9)." (Doc. # 13-7 at 312.) He stated that Ms. Gould's "judgment and insight seems mildly to moderately impaired secondary to probable underlying personality disorder qualities," that "[p]ersonality disorder not otherwise specified with antisocial features is indicated," and that "[h]er mental disorders are chronic." (Doc. # 13-7 at 311–12.) The ALJ acknowledged that Dr. Kutz diagnosed Ms. Gould with a probable personality disorder and stated that he considered Dr. Kutz's medical opinion and assigned it "some weight." *See* (Doc. # 13-2 at 18, 22). However, the ALJ did not discuss what if any consideration he gave to Dr. Kutz's references to Ms. Gould's personality disorder. The ALJ again erred by failing to consider these statements, which are probative of Ms. Gould's disability and her ability to socialize with coworkers. *See Berryhill*, 64 F. App'x at 200.

3.   Diagnoses by Dr. Shanklin

Dr. Shanklin is Ms. Gould's treating physician, as the ALJ noted in his decision. *See* (Doc. # 13-2 at 17) ("She is treated by Dr. Shanklin every month. . . ."). The Commissioner correctly notes that Dr. Shanklin did not diagnose Ms. Gould with schizophrenia, as Ms. Gould argues.[5] However, Dr. Shanklin did diagnose Ms. Gould

---

[5] Ms. Gould attached to her Reply an excerpt from her medical records at Mt. San Rafael Hospital Clinic. (Doc. # 21 at 2.) Out of context, this exhibit suggests Dr. Shanklin diagnosed

with major neurocognitive disorder, persistent depressive disorder, and dependent personality disorder. (Doc. # 13-8 at 407.) The ALJ reached the conclusion that Ms. Gould's severe impairments were traumatic brain injury, affective disorder, and anxiety disorder, without discussing Dr. Shanklin's diagnoses or explaining his disagreement with those diagnoses. (Doc. # 13-2 at 13.) Dr. Shanklin's diagnoses supported Ms. Gould's claims of disability, and the ALJ thus erred by not considering them. *See Sutherland*, 322 F. Supp. 2d at 289 ("the ALJ cannot "simply pick and choose . . . only such evidence that supports [his] determination, without affording consideration to evidence supporting the plaintiff's claims.").

## B.     MS. GOULD'S OTHER ARGUMENTS

Ms. Gould's remaining arguments are unavailing for the following reasons.

### 1.     The ALJ's Conclusion that Ms. Gould's Ability to Stand Was Unrestricted

Ms. Gould argues that the ALJ erred by concluding that her ability to stand was unrestricted. The ALJ considered the inconsistencies between Ms. Gould's hearing testimony and her prior statements to medical providers. *See Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir. 1992) (noting discrepancies between the claimant's prior statements and his hearing testimony); *compare* (Doc. # 13-1 at 68–69, 72, 74) (testifying that she can only stand for 20 minutes at a time) *with* (Doc. # 13-7 at 290–91) (stating Ms. Gould "find[s] corners to stand on with a sign," her "[i]ncome comes from

---

Ms. Gould with "unspecified schizophrenia spectrum and other psychotic disorder." However, in context, the administrative record suggests that Elizabeth Chapman diagnosed Ms. Gould with schizophrenia (Doc. # 13-8 at 399-400), and Dr. Shanklin diagnosed Ms. Gould with major neurocognitive disorder, persistent depressive disorder, and dependent personality disorder (Doc. # 13-8 at 407). Ms. Gould may not rely on Ms. Chapman's diagnoses for SSI purposes because Ms. Chapman was not a licensed physician or psychologist. *See* 20 C.F.R. § 416.902.

standing with a sign," and her typical day is spent "finding a corner and standing with a sign, waiting for food or money, donations."). The ALJ also considered the inconsistency of Ms. Gould's hearing testimony with objective medical evidence, noting that physical examinations indicated she had normal muscle strength, bulk, sensation, coordination, gait, station, and no abnormal movements. *See Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing testimony, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence"); *see also* (Doc. # 13-7 at 270–71, 282, 292–93); (Doc. # 13-9 at 480, 525–26); (Doc. # 13-10 at 548–49, 552, 591). The record on this point was, therefore, well developed, and the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The ALJ reasonably weighed the credibility of the foregoing evidence, and his conclusion that Ms. Gould's ability to stand was unrestricted was based upon substantial evidence.

2.    The ALJ's Consideration of the Lack of MRI Results in the Administrative Record

Further, Ms. Gould argues that the ALJ "blamed" her for not getting an MRI of her traumatic brain injury. (Doc. # 15.) However, the ALJ conceded that Ms. Gould suffered a traumatic brain injury at Step Two, despite the lack of an MRI or other medical records from around the date of the alleged motor vehicle accident. The lack of MRI results was, thus, not material to Ms. Gould's case, and the ALJ's "duty to develop the record is limited to fully and fairly developing the record as to material issues." *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997).

### 3.   The ALJ's Exclusion of Untimely Medical Records

Ms. Gould argues that the ALJ improperly excluded medical records she brought to the hearing. However, an ALJ may decline to consider evidence submitted less than five business days before a hearing, absent good cause—i.e., that the Social Security Administration misled the claimant, that the claimant had a physical, mental, educational, or linguistic limitation that prevented her from informing the ALJ about the evidence or submitting it sooner, or that some other circumstance beyond the claimant's control prevented her from doing so. *See* 20 C.F.R. § 416.1435(a). At the hearing, Ms. Gould stated that she received the records two days before the hearing but could not afford to fax them. (Doc. # 13-1 at 65.) It was within the ALJ's discretion to reject Ms. Gould's late submission because the reasoning she provided prior to the issuance of the ALJ's determination, i.e., at the hearing, did not constitute good cause within the meaning of 20 C.F.R. § 416.1435(a). *See id*. (providing that an ALJ **will** accept written evidence submitted after the deadline if the ALJ "has not yet issued a decision" and good cause exists).[6]

### 4.   The ALJ's Consideration of Ms. Gould's Criminal Conviction

Ms. Gould reported having been incarcerated for forging a signature on a check, which resulted in an $86,000 restitution obligation. The ALJ found that Ms. Gould's forged check and corresponding restitution obligation "demonstrates potential

---

[6] After the issuance of the ALJ's determination, in her Beginning Brief, Ms. Gould stated that she made repeated attempts to obtain the records but her disability frustrated her ability to effectively communicate with her medical provider. (Doc. # 15.) However, 20 C.F.R. § 416.1435(a) makes clear that the showing of good cause must be made before the ALJ issues his or her decision in order to make the consideration of late evidence mandatory. Because the reason given at the hearing did not constitute good cause, it was within the ALJ's discretion not to consider the late submission.

substantial gainful activity pursuant to SSR 94-1c." (Doc. # 13-2 at 23.) Ms. Gould argues that the ALJ did not ask her about the circumstances surrounding her conviction and, therefore, improperly deduced from the conviction that she can engage in substantial gainful activity. (Doc. # 15.)

In determining whether the claimant can engage in substantial gainful activity, the regulations direct an ALJ to focus on whether the claimant is performing significant physical or mental activities with the intent of earning money or making a profit. Pursuant to SSR 94-1c, illegal activities can constitute substantial gainful activity. 1994 WL 8408 (Jan. 12, 1994). However, the ALJ in SSR 94-1c thoroughly developed the record regarding the claimant's illegal activity and engaged in clear and robust analysis on this point. The ALJ asked the claimant 18 related questions at the hearing and concluded thereafter, based on the claimant's testimony, that his criminal activity constituted substantial gainful activity valued at approximately $5,600 per month. The ALJ made specific findings in his determination to support the conclusion that the claimant performed significant physical or mental activity with the intent of earning money or making a profit, albeit illegally:

> In order to steal he must "case" the area in which he has determined to steal the property. He must then plan on how he is going to steal the property and then actually steal it. During the month in which the hearing was held the claimant was stealing chainsaws. Lifting and carrying the chainsaws would also be significant physical activity. The planning and execution of the larceny entails significant mental activity. From these activities the claimant earns enough money to support his cocaine habit and provide him with other money in substantial amounts exceeding $200 to $300 a day.

*Id*. By contrast, in the instant case, the ALJ did not ask Ms. Gould any questions about her conviction at the hearing. He did not make any findings that demonstrate

how Ms. Gould's illegal activity involved significant physical or mental activity with the intent of earning money or making a profit. He merely made the conclusory statement that the forged check and corresponding restitution obligation "demonstrates potential substantial gainful activity pursuant to SSR 94-1c." (Doc. # 13-2 at 23.)

Nevertheless, this error was harmless. The ALJ pointed in his determination to other examples of Ms. Gould's substantial gainful activity, including that she performed one year of full-time work counting marijuana plants in 2013 and that she panhandles with "sufficient success to pay for her rented office space, pay for bus fare, and care for a cat." (*Id*.) Therefore, the ALJ's consideration of Ms. Gould's conviction, although flawed, is not reversible error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## IV.    CONCLUSION

Based on the foregoing, the Court ORDERS that the decision of the Commissioner is REVERSED and this case is REMANDED to the Commissioner for further fact finding consistent with this Order. The Clerk of Court is respectfully directed to enter judgment accordingly.


DATED: March 19, 2020


BY THE COURT:


CHRISTINE M. ARGUELLO
United States District Judge